# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT


KEVIN J. MCCOLL     :
             :      PRISONER
   v.          :  Case No. 3:08cv202 (CSH)
             :
WARDEN PETER MURPHY   :


## RULING ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Kevin J. McColl is an inmate confined at the MacDougall Correctional Center in Suffield, Connecticut. He brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2000 conviction on burglary, robbery and assault charges. For the reasons set forth below, the petition is denied.

## I. Factual Background

The Connecticut Appellate Court determined that the jury could have found the following facts. The victims, Norman Lezotte and his wife, Patricia Lezotte, lived in Waterbury in a third floor apartment of a three-family house. At the time of the incident described herein, Mr. Lezotte was 71 years old. On the night of March 21, 1999, Mr. and Mrs. Lezotte went to bed about 11:30 p.m. At approximately 1:30 a.m. on March 22, 1999, Mr. and Mrs. Lezotte were awakened by banging sound, which later proved to be the petitioner kicking down the rear door to their residence. When Mr. Lezotte entered the kitchen from the bedroom, he observed that the rear porch door was open.

The petitioner then lunged at Mr. Lezotte, grabbed him by the throat and choked him. In response, Mr. Lezotte elbowed the petitioner in the stomach and punched the petitioner twice in the head. The petitioner then grabbed Mr. Lezotte in a chokehold and threw him to the floor, jumped on Mr. Lezotte's back with both sneaker-clad feet, kicked him approximately a dozen

times in the side and back and twice in the head. During the time that the petitioner was stomping on and kicking Mr. Lezotte in the head, side and back, the petitioner continually threatened to kill Mr. Lezotte if he moved or tried to get up and also demanded that Mr. Lezotte give him money. Mr. Lezotte responded verbally by informing the petitioner that he could have his wallet, which was on the kitchen counter and contained $11.00. In response, the petitioner kicked Mr. Lezotte and threatened Mrs. Lezotte, who was standing in the doorway to the kitchen. Mr. Lezotte instructed his wife to get money from the bedroom. The petitioner threatened to kill Mr. Lezotte if Mrs. Lezotte did not retrieve the cash from the bedroom.

Mrs. Lezotte had heard the petitioner kicking her husband and observed the petitioner's foot on her husband's back, pinning him to the floor. Mr. and Mrs. Lezotte's income tax refund, totaling about $1900.00, was located in an envelope in the bedroom. Mrs. Lezotte retrieved the envelope and handed it over to the petitioner. The petitioner demanded that Mrs. Lezotte give him the telephone from the wall of the residence and Mrs. Lezotte complied. In response to the petitioner's demands to open the door, Mrs. Lezotte opened a screen door and secondary door and permitted the petitioner to exit the residence down a rear stairway.

Mr. Lezotte placed a telephone call to the police from a first floor apartment in the building. Mr. Lezotte declined medical treatment initially. Later that morning, however, he went to the St. Mary's Hospital emergency room, complaining of pain in his back. He had suffered the following injuries: severe bruising to the right side of his back, a bruise to his right ear, and multiple scratches on his back and neck.

Tracy Fortier and the petitioner lived in a home next door to the Lezotte residence. On Friday, March 26, 1999, two Waterbury Police detectives investigating the crimes at the Lezotte residence proceeded to the home of the petitioner and Tracy Fortier. Prior to their arrival, the

petitioner instructed Tracy Fortier to inform the detectives that he had been at home on Sunday night and into Monday morning during the hours of the crimes at the Lezotte residence. Ms. Fortier complied with the petitioner's request. After the detectives left, Ms. Fortier questioned the petitioner as to why he had instructed her to lie about his whereabouts on March 21 and 22, 1999. The petitioner informed Ms. Fortier that he had tried breaking into the Lezotte residence to look for money to buy drugs and had held Mr. Lezotte down, but had not beaten him.

On April 1, 1999, Ms. Fortier went to the Waterbury Police station because she believed that the petitioner had committed the crimes at the Lezotte residence. Waterbury Police Sergeant Eugene Coyle, Detective Nicholas Pesce and three uniformed officers proceeded to home of Ms. Fortier and the petitioner and they gained the petitioner's consent to enter. Once inside the residence, Sergeant Coyle read the petitioner his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), from a preprinted rights card and asked if he would give the police permission to search the residence. The petitioner indicated that he knew and understood his rights as they were explained to him by Sergeant Coyle and also initialed and signed a consent to search form. The defendant admitted that he was responsible for the burglary at the Lezotte residence, but that he did not have the clothes he had worn that night or the money that he had stolen from the Lezottes. He had retained the sneakers that he had worn that night and showed Sergeant Coyle and the other officers the sneakers.

Sergeant Coyle and Detective Pesce remained in the petitioner's residence for about ten to fifteen minutes and then asked the petitioner if he would be willing to travel to the Waterbury police station to give a statement. The petitioner consented and Sergeant Coyle and Detective Pesce transported him to the station in an unmarked police vehicle. The petitioner was not in handcuffs during his ride to the station. Upon his arrival, the petitioner turned over his sneakers,

which he had brought from his residence, and was placed in an interview room.  Sergeant Coyle

then typed up the petitioner's written statement.  *See State v. McColl*, 74 Conn. App. 545, 548-

52, 813 A.2d 107, 113- 14 (2003).

## I.      Standard of Review

The federal court will entertain a petition for writ of habeas corpus challenging a state

court conviction only if the petitioner claims that his custody violates the federal laws or the

Constitution.  *See* 28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation

of state law is not cognizable in the federal court.  *See Estelle v. McGuire*, 502 U.S. 62, 68

(1991).

The federal court may not grant a petition for a writ of habeas corpus filed by a person in

state custody with regard to any claim that was rejected on the merits by the state court**,** unless

the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme Court "may be either a generalized

standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a

standard in a particular context."  *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir.), *cert. denied*,

537 U.S. 909 (2002).  "Clearly established federal law" is found in holdings, not dicta, of the

Supreme Court at the time of the state court decision.  *See Carey v. Musladin*, 549 U.S. 70, 74

(2006).

A decision is "contrary to" clearly established federal law where the state court applies a

rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). "In either event, a state court ruling is 'contrary to' Supreme Court precedent only if it is 'diametrically different, opposite in character or nature, or mutually opposed' to the precedential holding." *Lurie v. Wittner*, 228 F.3d 113, 127 (2d Cir. 2000) (quotation marks omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it also must be objectively unreasonable, "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Boyette v. Lefevre*, 246 F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of correctness is afforded state court findings where state court has adjudicated constitutional claims on the merits). Because collateral review of a conviction applies a different standard than that on direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. *See Brecht v. Abrahamson*, 507 U.S. 619, 634 (1993).

## II.    Procedural Background

On November 8, 1999, a jury in the Connecticut Superior Court for the Judicial District of Waterbury convicted petitioner of one count of Burglary in the First Degree in violation of Connecticut General Statutes § 53a-101(a)(2); one count of Assault of a Victim Sixty or Older in the Second Degree in violation of Connecticut General Statutes § 53a-60b(a); and two counts of

Robbery in the First Degree in violation of Connecticut General Statutes § 53a-134(a)(3).  On January 7, 2000, a judge sentenced the petitioner to a total effective sentence of twenty-eight years of imprisonment.  *See Pet. Writ Habeas Corpus* at 2.

On appeal, the petitioner raised five grounds.  He argued that: (1) there was insufficient evidence to sustain his conviction for assault and robbery; (2) the court improperly instructed the jury on "feet and footwear" as a dangerous instrument; (3) the court erred when it denied his motion to suppress his confession as involuntary or as the fruit of an illegal entry into his home; (4) the court improperly instructed the jury on intent when the crimes were specific intent crimes; and (5) his conviction and sentence on two counts of robbery violated the double jeopardy clause of the Fifth Amendment.  *See McColl*, 74 Conn. App. at 547, 813 A.2d at 112-13.  On January 21, 2003, the Connecticut Appellate Court affirmed the judgement of conviction.  *See id.* at 580, 813 A.2d at 129.  On March 11, 2003, the Connecticut Supreme Court denied the petition for certification to appeal the decision of the appellate court.  *See State v. McColl*, 262 Conn. 953, 818 A.2d 782  (2003).

On June 5, 2003, the petitioner filed a state habeas petition claiming trial counsel was ineffective in numerous ways.  On January 5, 2005, the petitioner filed a second amended petition.  *See McColl v. Commissioner of Correction*, No. CV030003972, 2005 WL 1758624 (Conn. Super. Ct. June 15, 2005).  On June 15, 2005, after holding an evidentiary hearing, the court denied the habeas petition.  On appeal, the petitioner raised only two claims: (1) trial counsel was ineffective for conceding his guilt during the closing argument and (2) trial counsel failed to permit him to testify in his own defense.  On May 15, 2007, the Connecticut Appellate Court dismissed the appeal.  *See McColl v. Commissioner of Correction*, 101 Conn. App. 232, 922 A.2d 180 (2007).  On September 5, 2007, the Connecticut Supreme Court denied review.

*See McColl v. Commissioner of Correction*, 284 Conn. 902, 931 A.2d 264 (2007).

## III. Discussion

The petitioner challenges his state conviction on six grounds: (1) his conviction is illegal because it was based on evidence obtained through an unconstitutional search and seizure; (2) his conviction is illegal because it was based on evidence obtained during an unlawful arrest; (3) his trial attorneys afforded him ineffective assistance of counsel; (4) his conviction and sentence on two counts of robbery violated the double jeopardy clause of the Fifth Amendment; (5) the trial court's jury instructions were confusing; and (6) there was insufficient evidence to convict him of two counts of robbery.

### A. Fourth Amendment Violations

The petitioner's first two grounds for relief assert violations of the Fourth Amendment protection against unreasonable search and seizure. He argues that the evidence seized as a result of the search conducted by officers of the Waterbury Police Department should have been excluded because he did not give the police consent to enter or search his residence. Petitioner further maintains that the confessions made by him at his residence and at the police department should have been excluded because they were made absent a lawful warrant for his arrest. The respondent argues that both of these Fourth Amendment claims are barred from federal habeas review.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 481-82; *accord Wallace v. Kato*, 549 U.S. 384, 395 n.5 (2007) (reaffirming that

*Stone v. Powell* precludes federal habeas review of Fourth Amendment claims unless the state fails to provide opportunity for full and fair litigation).

In so holding, the Supreme Court weighed the justifications and costs of the exclusionary rule. The primary justification, the Supreme Court noted, is to deter police conduct that violates a criminal defendant's Fourth Amendment rights. *Powell*, 428 U.S. at 486. Among the costs of the rule is the exclusion of evidence that "is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant." *Id.* at 490. Consequently, the Court noted, "application of the rule . . . deflects the truth-finding process and often frees the guilty." *Id.* In concluding that the costs of applying the exclusionary rule on collateral review outweighed the justifications for its application, the Court observed that the disincentive to police misconduct created by application of the exclusionary rule at trial would not be enhanced by continued application of the rule on federal habeas corpus review occurring many years after trial, but substantial societal costs of application of the rule on collateral review would "persist with special force." *Id.* at 493.

The Supreme Court has extended the holding in *Powell* to preclude a Fourth Amendment challenge to the introduction into evidence of a confession made after an allegedly unlawful arrest. *See Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam)(reversing grant of habeas corpus where circuit court of appeals had determined that arrest violated Fourth Amendment and that custodial statements taken following arrest should have been suppressed).

In the wake of *Powell*, the Second Circuit developed a test to determine when a state prisoner has been denied an opportunity for full and fair litigation of his Fourth Amendment claims. *See Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). The Second Circuit concluded that the state is only required to provide an "opportunity" for the criminal defendant to obtain a

full and fair litigation of the Fourth Amendment claim. Thus, review of Fourth Amendment claims in federal habeas petitioner is warranted only in two instances: "if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations" or "if the state has provided a corrective mechanism, but the [petitioner] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Id.* (citations omitted). Whether petitioner took full advantage of the opportunity to litigate his Fourth Amendment claims is irrelevant. The bar to federal habeas review of Fourth Amendment claims is incurable as long as the state provided a full and fair opportunity for petitioner to litigate that claim. *See Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002).

The petitioner concedes that Connecticut provides a corrective procedure to redress his alleged Fourth Amendment claims. The Connecticut Practice Book sets forth the procedures for filing a motion to suppress evidence obtained as a result of an allegedly illegal search or seizure. *See* Conn. Practice Book §§ 41-12 through 41-17. The petitioner filed a motion seeking suppression of his written and oral confessions to the police and the trial court held a hearing on the motion to suppress. *See* Resp't's Mem. Opp'n App. Q, Nov. 3, 1999 Transcript (evidentiary hearing on motion to suppress) and Nov. 4, 1999 Transcript at 2-8 (oral decision denying motion to suppress). Although the petitioner did not do so, he could have moved to suppress the seizure of his sneakers on the ground that he did not consent to the search or had been detained absent a valid arrest warrant.

The petitioner contends that he did not have a fair opportunity to litigate his Fourth Amendment claims because the trial judge was biased. Without support, he concludes that the judge must have been biased because key facts found by him at the suppression hearing were contrary to the evidence. The petitioner further surmises that the trial judge was not motivated to

grant the motion to suppress because if he had done so, he would have been forced to declare a mistrial because the sneakers, which were also fruit of the unreasonable search, had already been admitted into evidence. The petitioner offers no support for this contention.

The record is clear that the motion to suppress did not seek to exclude the sneakers seized from the petitioner's residence and counsel confirmed this fact at the start of the suppression hearing. *See* Resp't's Mem. Opp'n App. Q, Nov. 3, 1999 Suppression Hearing Transcript at 41-42. Thus, it does not follow that if the judge granted the motion to suppress the confessions, he would have been forced to exclude the sneaker evidence as well or declare a mistrial. Accordingly, this court concludes that the petitioner has not shown that the trial judge was biased or that the petitioner was denied a full and fair opportunity to litigate his Fourth Amendment claims. Petitioner cannot meet the first exception that would enable this court to review these claims.

The petitioner's argument also suggests that, rather than being denied an opportunity to litigate his claims, he is dissatisfied with the state court's decision denying his motion to suppress. The court construes this argument as an attempt to demonstrate an "unconscionable breakdown" in the state's corrective process to satisfy the second exception.

An "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." *Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988) (noting as examples, bribing trial judge, government's knowing use of perjured testimony and extracting guilty plea by torture), *aff'd*, 852 F.2d 59 (2d Cir. 1988); *accord Capellan*, 975 F.2d at 70 (observing that "unconscionable breakdown" must entail some sort of "disruption or obstruction of a state proceeding"). Thus, the inquiry must focus on "the existence

and application of the corrective procedures themselves" and not on the "outcome resulting from the application of adequate state court corrective procedures" to determine whether an unconscionable breakdown has occurred. *Capellan*, 975 F.2d at 71.

The petitioner availed himself of the state process by litigating his Fourth Amendment claims at trial. His disagreement with the state court's rulings "is not the equivalent of an unconscionable breakdown in the state's corrective process." *Id.* at 72; *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977) ("*Stone v. Powell* ... holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts."), *cert. denied*, 434 U.S. 1038 (1978). Furthermore, a claim that his attorneys failed to move to suppress certain evidence is not the equivalent of unconscionable breakdown. *See Parker v. Ercole*, 582 F. Supp. 2d 273, 287 (N.D.N.Y. 2008) (citing cases). Thus, petitioner has not demonstrated an unconscionable breakdown in the state process, and federal review of petitioner's Fourth Amendment claims is barred by *Stone v. Powell*. The court considers petitioner's Sixth Amendment claims below. *See Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986) (rejecting arguments that *Stone v. Powell* bars Sixth Amendment ineffective assistance of counsel claims premised on counsel's failure to raise Fourth Amendment objections).

### B.     Double Jeopardy

In the fourth ground for relief, the petitioner argues that his conviction on two counts of robbery in the first degree violates his right to be free from double jeopardy. The respondent contends that relief should be denied on this claim because the state court reasonably applied established federal law.

The Fifth Amendment's Double Jeopardy Clause provides that no person shall be "subject for the same offense to be twice put in jeopardy of life and limb." The petitioner was

tried only once. Thus, this particular prohibition is not applicable. The Double Jeopardy Clause also prohibits multiple punishments for the same offense in a single proceeding. *See Jones v. Thomas*, 491 U.S. 376, 380-81 (1989). This latter protection is "limited to ensuring that the total punishment [does] not exceed that authorized by the legislature." *United States v. Halper*, 490 U.S. 435, 450 (1989).

To determine whether convictions under separate sections of state criminal law arising from involvement in a single event or common series of events violate the Double Jeopardy Clause, the court must review: (1) the language of the statutes; (2) a comparison of the statutes under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932); and (3) any express congressional intent regarding multiple punishments. *See United States v. Muhammad*, 824 F.2d 214, 218 (2d Cir. 1987). The *Blockburger* test examines whether one offense requires proof of a fact not required to establish the other. If not, the two offenses are the same for double jeopardy purposes. *See* 284 U.S. at 304. The *Blockburger* test is a rule of statutory construction that should only be applied when legislative intent is unclear. If the legislature has authorized the imposition of cumulative sentences in one trial, the Double Jeopardy Clause merely prohibits a court from imposing a sentence that exceeds what the legislature intended. *See Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

In analyzing this claim, the Connecticut Appellate Court applied the *Blockburger* test. Because the Connecticut Appellate Court applied the correct legal principles, the decision is not contrary to federal law. *See Lurie v. Wittner*, 228 F.3d 113, 127 (2d Cir. 2000), *cert. denied*, 532 U.S. 943 (2001) (ruling is contrary to established federal law when state court applies law contradicting Supreme Court precedent).

The court next must determine whether the Connecticut Appellate Court's application of

federal law was objectively unreasonable. This determination depends on the nature of the particular rule. If the rule is specific, the parameters of reasonable application are narrow. If, however, the rule is more general in scope, there may be a substantial amount of discretion in applying the rule to the facts of a particular case. *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). The Double Jeopardy Clause has general scope. The Supreme Court has not specified the manner in which the court determines whether the legislature intended to permit multiple punishments.

The Connecticut Appellate Court considered the two subsections of the statute and determined that each required proof of something that the other did not. Section 53a-134(a)(3) provides that "[a] person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 . . . he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument. . . ." Section 53a-133(a)(1) provides that a robbery is committed "when, in the course of committing a larceny, [a person] uses or threatens the immediate use of physical force upon another person for the purpose of . . . [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking." Section 53a-133(a)(2) provides that a robbery is committed "when, in the course of committing a larceny, [a person] uses or threatens the immediate use of physical force upon another person for the purpose of . . . compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of a larceny."

The Connecticut Appellate Court concluded that subsection (1) required proof that the petitioner's purpose in using force on Norman Lezotte was to overcome his resistance to the taking of the property or to the retention of the property immediately after taking it. Subsection

(2) required proof that the force used on Norman Lezotte was for the purpose of compelling the owner of the property or another person, Patricia Lezotte, to deliver up the property. These separate elements were reflected in the charging document. Thus, the Connecticut Appellate Court found that the two subsections were separate offenses under the *Blockburger* test. *McColl*, 74 Conn. App. at 571-72, 813 A.2d at 125-26.

This Court concludes that the Connecticut Appellate Court reasonably applied federal law in analyzing this claim and determining that the Double Jeopardy Clause was not violated. The amended petition for writ of habeas corpus is denied as to the fourth ground for relief.

### C. Jury Instructions

The fifth ground for relief concerns instructions to the jury regarding the element of a dangerous instrument in the assault and robbery counts. The petitioner contends that the trial judge's instruction on the element of use of a dangerous instrument was confusing to the jury because it could have led them to believe that his foot alone was a dangerous instrument. The petitioner argues that this instruction was improper because as a matter of state law, neither a foot nor any other body part is considered to be a dangerous instrument. Petitioner contends further that the instruction violates the Due Process Clause of the Fourteenth Amendment.

The Supreme Court has held that the fact, standing alone, that a jury instruction may be incorrect under state law is not a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). To warrant habeas corpus relief, the petitioner must establish that the instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *see also Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (petitioner must show "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed by the Fourteenth

Amendment"). When analyzing a claim of an improper jury instruction, the court must consider the instruction in the context of the charge as a whole and the entire trial record. *See Francis v. Franklin*, 471 U.S. 307, 315 (1985). In evaluating a jury instruction, the court considers "the way in which a reasonable juror could have interpreted the instruction." *Sandstrom v. Montana*, 442 U.S. 510, 514 (1979). The Connecticut Appellate Court's statement of the law, although taken from state cases, is consistent with Supreme Court precedent.

In analyzing this claim, the Appellate Court reviewed the jury instruction as a whole and determined that the jury could not have been confused as to what the definition of a dangerous instrument was or what it might consider to be a dangerous instrument. The court concluded that the trial judge clearly explained to the jury on at least three occasions the use and definition of "a dangerous instrument" as it pertained to the facts of the petitioner's case. Further, the trial judge read the information which contained the assault and robbery counts and, as to each of those counts, charged the petitioner with the use of a dangerous instrument defined as feet and footwear. The trial judge also informed the jury that the State of Connecticut had alleged that the petitioner's feet and footwear constituted the dangerous instrument. The Appellate Court acknowledged that the trial judge had used the term "foot **or** footwear" instead of "foot **and** footwear" on one occasion, but concluded that there was no reasonable possibility that this one misstatement had misled the jury to believe that the petitioner was ever barefoot or to consider whether a bare foot could be a dangerous instrument. Thus, the Appellate Court determined that the trial court's instructions made it clear to the jury that it was to consider whether the manner in which the petitioner used his sneaker-clad foot, rather than just his unshod foot, constituted use of a dangerous instrument. The court concludes that the state court analysis was not an unreasonable application of Supreme Court law. The habeas petition is denied as to the fifth

ground for relief.

### D. Insufficient Evidence

In the sixth ground for relief, the petitioner contends that the state presented insufficient evidence to support his convictions for two counts of robbery. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Federal courts, however, do not relitigate state trials and make independent determinations of guilt or innocence. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). When a petitioner challenges the sufficiency of the evidence used to convict him, the court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In discussing this standard, the Supreme Court emphasized "the deference owed the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency [of the evidence] review." *Wright v. West*, 505 U.S. 277, 296 (1992). The Connecticut Appellate Court applied this standard in reviewing the sufficiency of the evidence claims. Thus, the state decision was not contrary to established Supreme Court law.

To establish that the petitioner committed a robbery in the first degree, the state was required to prove that in the course of the commission of a larceny, the petitioner used or threatened to use physical force upon the victim by means of a dangerous instrument. *See* Conn. Gen. Stat. §§ 53a-134(a)(3); 53a-133. The petitioner challenges the sufficiency of the evidence as to the element of use of a dangerous instrument. He contends that there was insufficient evidence for the jury to find that he used a dangerous instrument. He also contends that his threats of physical force were not related to the use of a dangerous instrument.

Evidence was presented at trial that the petitioner was five feet, eleven inches tall and weighed 195 pounds and the victim was a seventy-one year old man who had a heart condition. During the break-in, the petitioner was wearing sneakers at all times and repeatedly kicked Mr. Lezotte in the head and back. A physician testified that several vital organs, specifically the lungs and kidneys, were located in the area where Mr. Lezotte was kicked and that blows to those organs could result in serious internal injuries, including death. The physician also testified that increased weight added to the foot by a sneaker would have multiplied the force that the petitioner inflicted on Mr. Lezotte's abdomen area.

Mr. Lezotte testified that after he had been thrown to the floor, the petitioner prevented him from standing up or moving by either kicking him or holding him down with his sneaker-covered feet and threatened to kill him if he tried to stand up. When Mr. Lezotte failed to give the petitioner money in response to his verbal demand, the petitioner kicked Mr. Lezotte again. Mr. Lezotte testified that he suffered severe bruising and pain in the area of his kidneys and his rib cage as a result of the kicks to his mid-section by the petitioner. Mrs. Lezotte testified that she could hear the petitioner repeatedly kicking her husband in the kitchen and that she gave the petitioner her cash because the petitioner threatened to kill her husband if she did not do so.

The Connecticut Appellate Court concluded that the jury reasonably could have determined that the manner in which the petitioner used his sneaker-covered foot made it a dangerous instrument capable of causing death or serious physical injury to Mr. Lezotte. The court noted that the evidence presented as to the height and weight of the petitioner, the age and physical condition of Mr. Lezotte, the location on the body to which the kicks were directed, the number of kicks and the force of the kicks, which was increased by the weight of the sneaker, permitted the jury to reach this decision. The Appellate Court found that the jury also could have

inferred that the use of the dangerous instrument, the sneaker-covered foot of the petitioner, in fact caused the physical injuries to Mr. Lezotte. With regard to the element of the robbery counts requiring the use or threatened use of physical force, the Appellate Court concluded that it was reasonable for the jury to find that the petitioner had threatened the use of or used a dangerous instrument capable of causing serious injury during the course of the larceny because the petitioner continually used his feet and footwear to kick, immobilize and prevent Mr. Lezotte from challenging the taking of his property and to cause Mrs. Lezotte to hand over their telephone and cash to the petitioner. Thus, the jury could have rationally concluded that the petitioner intended to carry out his threat to kill Mr. Lezotte by continuing to kick him in his mid-section where vital organs were located.

Viewing the evidence in the light most favorable to the prosecution, as required under Supreme Court precedent, the court concludes that the Connecticut Appellate Court's determination that the state had presented sufficient evidence to support the petitioner's convictions for two counts of robbery was not an unreasonable application of established federal law or based upon an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). The petition for a writ of habeas corpus is denied on this ground.

### E. Ineffective Assistance of Counsel

The petitioner argues that trial counsel were ineffective in five different ways: (1) they did not prepare for or present a defense at trial; (2) they did not inform him of a potential plea deal prior to trial; (3) they failed to challenge the admission of evidence at trial; (4) they refused to permit him to testify at trial; and (5) they conceded his guilt during closing arguments. The respondent argues that the first three claims of ineffective assistance of counsel have not been exhausted because the petitioner did not raise them on appeal to the Connecticut Appellate or

Supreme Courts.

A prerequisite to habeas corpus relief under 28 U.S.C. § 2254 is the exhaustion of available state remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan*, 526 U.S. at 845. The Second Circuit requires the district court to conduct a two-part inquiry. First, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003) (citation omitted). In other words, "[t]he claim presented to the state court ... must be the 'substantial equivalent' of the claim raised in the federal habeas petition." *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003) (citations omitted). Second, he must have "utilized all available mechanisms to secure appellate review of the denial of that claim." *Lloyd v. Walker*, 771 F. Supp. 570, 573 (E.D.N.Y. 1991) (citing *Wilson v. Harris*, 595 F.2d 101, 102 (2d Cir. 1979)).

A review of the amended habeas petition filed in state court includes no claim of ineffective assistance relating to the failure of petitioner's attorney to relay an offer of a plea deal to him prior to trial. Furthermore, the only claim in the amended state court habeas petition that relates to challenges to the admission of evidence was the claim that trial counsel neglected to attack the petitioner's statement to the Waterbury police as an involuntary statement. This claim, however, was not raised on appeal to either the Connecticut Appellate or Supreme Courts. Although the petitioner raised the claim of failure to present a defense at trial in his amended petition, he did not assert this claim on appeal to the Connecticut Appellate or Supreme Courts. Thus, the briefs submitted by the petitioner in support of his appeals to the Connecticut Appellate

and Supreme Courts only include the claims regarding counsel's alleged refusal to permit the petitioner to testify at trial and counsel's admission of the petitioner's guilt in his closing argument.

The Second Circuit has recognized that each separate factual allegation made in support of a claim of ineffective assistance of counsel must be fairly presented to a state court before a federal court may rule on the claim. *See Caballero v. Keane*, 42 F.3d 738, 740-41 (2d Cir. 1994); *Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir. 1991). Because the second claim was not raised in any state habeas petition, the third claim was only partially raised in the state habeas and neither the first nor third claim were raised on appeal from the denial of the habeas petition, those claims have not been fully exhausted. Although the court has the discretion to stay a habeas petition that includes both exhausted and unexhausted claims to permit a petitioner to litigate the unexhausted claim in the state courts and then return here for review of all exhausted claims, the court also has the authority to reach the merits of an unexhausted claim for purposes of denying the habeas petition in its entirety. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005); 28 U.S.C. § 2254(b)(2). The court will address the merits of the unexhausted claims.

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, petitioner must demonstrate, first, that counsel's conduct was below an objective standard of reasonableness established by prevailing professional norms and, second, that this deficient performance caused prejudice to him. *Id.* at 687-88. Counsel is presumed to be competent. Petitioner bears the burden of demonstrating unconstitutional representation. *See United States v. Cronic*, 466 U.S. 648, 658 (1984).

To satisfy the prejudice prong of the *Strickland* test, petitioner must show that there is a

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine confidence in the outcome" of the trial. *Strickland*, 466 U.S. at 694. The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions. *Rompilla v. Beard*, 545 U.S. 374, 381 (2005). To prevail, petitioner must demonstrate both deficient performance and sufficient prejudice. *See Strickland*, 466 U.S. at 700. Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong. *See id.* at 697, 700.

### 1.     Presentation of a Defense

The petitioner claims that his attorneys did not present a defense at trial. The petitioner contends that counsel's failure to present any evidence or witnesses at trial was unreasonable given the evidence submitted by the State of Connecticut regarding the alleged confession he made to the police.

In the amended petition for writ of habeas corpus filed in the state habeas petition, the petitioner raised various tasks that trial counsel neglected to undertake in preparing for and presenting a defense at trial. The petitioner contended that counsel failed to develop a specific trial strategy or discuss a trial strategy or tactic with him, conduct necessary research in support of the motion to suppress, retain the services of a private investigator to identify potential witnesses, retain the services of an expert forensic witness to rebut testimony regarding the sneaker print, conduct a sufficient number of lengthy meetings to discuss the case with him, or make arrangements for him to undergo a polygraph exam. In analyzing this claim, the Connecticut Superior Court applied the standard established in *Strickland*. Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to"

prong of section 2254(d)(1).

In his decision denying the amended habeas petition, the trial judge determined that the petitioner had presented insufficient evidence at the habeas hearing to demonstrate that the various strategies that the petitioner claimed counsel failed to undertake were in fact viable strategies that counsel should have pursued. Furthermore, the trial judge noted that the petitioner had not shown what impact these various strategies would have had on the outcome of the trial had counsel undertaken them. Thus, the trial court determined that the petitioner had not demonstrated that counsel's conduct was deficient. The trial judge concluded that even if counsel's preparation for and presentation of a defense fell below a standard of reasonable professional competence, the petitioner had failed to provide evidence showing that he had been prejudiced by this deficient conduct.

The petitioner's habeas hearing testimony reflects that he claimed to have given his attorneys the names of three witnesses who were allegedly with him the night of the assault on the Lezottes. Of the three witnesses, one told the petitioner he would not testify at trial, one had been convicted of a felony prior to trial and the petitioner was not sure the third was in the Waterbury area at the time of trial. Thus, the petitioner did not present evidence that these three potential witnesses were available to testify at trial or that he was certain that they would testify in his favor. Although the petitioner testified that he asked counsel to arrange for him to take a polygraph test and hire a handwriting expert, the petitioner did not provide evidence as to what information the handwriting expert would divulge or how the results of a polygraph test would benefit him. Further, there was no proof presented that an independent forensic expert would have testified any differently than the Waterbury Police officer regarding the similarity of the footprint on the Lezotte's door and the print made by the petitioner's sneakers. The petitioner

testified that he requested that his attorneys obtain the 911 tape of the telephone call the Lezottes made to the police regarding the break-in. The petitioner did not provide evidence, however, that the 911 tape would still have been available at the time he requested that his attorneys obtain it. In light of all of the petitioner's testimony at the habeas hearing, the state court concluded that the petitioner had not presented evidence to show that the result of the trial would have been different had counsel prepared for and presented a defense employing the strategies petitioner suggested. The state court's determination that the petitioner had not met the prejudice prong of the *Strickland* standard was not an unreasonable application of Supreme Court law. The petition is denied as to this claim of ineffective assistance of counsel.

### 2. Plea Deal

The petitioner contends that his attorneys did not convey the state's plea offer prior to trial. However, petitioner testified during the hearing on the claims in his state amended habeas petition that one of his trial attorneys informed him of a plea offer at the beginning of the day his trial was to begin. *See* Resp't's Mem.Opp'n, App. T, April 15, 2005 Habeas Hearing Transcript at pp. 27-28, 38-40, 57. In addition, the petitioner's trial counsel testified that the plea offer was received just prior to or just after jury selection. *See id.* at May 19, 2005 Habeas Hearing Transcript at pp. 32-33, 36-37, 39, 59, 62, 64-66, 77, June 7, 2005 Habeas Hearing Transcript at pp. 12, 29-30. Because the petitioner conceded that his trial attorney did present him with a plea offer prior to the start of evidence in his trial, the petitioner has not satisfied the deficient performance prong of the *Strickland* test. This claim of ineffective assistance of counsel is denied.

### 3. Challenges to Evidence Admitted at Trial

The petitioner contends that his trial attorneys failed to competently challenge evidence

that was admitted at trial. He describes the evidence as that which was acquired by a warrantless search of his residence and his warrantless arrest. He offers no further description of the evidence or how counsel's challenges to the evidence were not competent.

The only claim raised in his amended state habeas petition regarding challenges to evidence admitted at trial was directed to the petitioner's written confession made to Waterbury Police officers. The record reflects that counsel for the petitioner filed a motion to suppress the petitioner's written and oral confessions to the Waterbury Police officers. Counsel argued that the confessions elicited by Waterbury Police Officers were inadmissible because they were not given voluntarily, they were made in derogation of his *Miranda* warning, were made without the benefit of counsel and were the product of an unreasonable search of the petitioner's residence. The trial judge held a hearing on that motion outside the presence of the jury on the third day of trial. The petitioner testified at the hearing. After considering all the evidence and hearing testimony, the judge denied the motion to suppress in all respects.

Subsequently, trial counsel challenged the admission of the consent to search form that contained the petitioner's signature as well as the petitioner's written confession, but both pieces of evidence were admitted over counsel's objections. *See* Resp't's Mem. Opp'n App. S, Nov. 4, 1999 Trial Transcript at 36-60, 73. Counsel then cross-examined the police officer who was present during the search of the petitioner's residence and who typed up the petitioner's written statement at the police station. *See id.* at 77-92, 97-111. Counsel also cross-examined the forensics officer who compared the sneakers seized from the petitioner's residence to the sneaker print on the door of the victims' residence. *See id.* at 15-28. Counsel elicited testimony from the forensics officer that there was no way to determine that the Reebok sneakers found in the petitioner's residence were the same sneakers that made the print on the door of the Lezotte's

24

residence.  *See id.* at 18.  In addition, the Forensic Officer conceded that there were a lot of sneakers just like the petitioner's Reebok sneakers in New Haven County at the time of the break-in at the Lezotte's residence.  *See id.* at 18-20, 22.

It is evident that counsel made attempts to challenge the evidence admitted at trial.  The petitioner has not specified how these challenges were inadequate.  Thus, the habeas judge determined that the petitioner had not demonstrated that these unspecified methods of challenging the evidence admitted at trial were viable.   In addition, the habeas judge noted that the petitioner had not shown what impact these unidentified methods would have had on the outcome of the trial had counsel employed them to challenge the evidence.   Thus, the habeas judge concluded that the petitioner had failed to present evidence to demonstrate that counsel's challenges to the evidence admitted at trial fell below the standard of a reasonably competent attorney or that he had been prejudiced by this allegedly deficient conduct.   The state court's determination that the petitioner had not met either prong of the *Strickland* standard was not an unreasonable application of Supreme Court law.  The petition is denied as to this claim of ineffective assistance of counsel.

### 4.      Refusal to Permit Petitioner to Testify

The petitioner contends that trial counsel's refusal to permit him to testify at trial constituted ineffective assistance of counsel.  The petitioner raised this claim in his second amended habeas petition and on appeal from the denial of that petition.  It is well settled that a defendant in a criminal case has a constitutional right to testify on his own behalf.  *See Rock v. Arkansas*, 483 U.S. 44, 49 (1987).  Furthermore, that right is so "'fundamental' and personal to the defendant" that it is "waivable only by the defendant."  *Brown v. Artuz*, 124 F.3d 73, 77-78 (2d Cir. 1997) (quoting *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992)).

The Connecticut Appellate Court found that the petitioner provided no evidence other than his own testimony at the habeas hearing that he had wanted to testify at his criminal trial. Both attorneys who represented the petitioner testified that although the petitioner had a right to testify at trial, he did not express an interest in doing so. The trial court credited the testimony of the petitioner's attorneys over the petitioner's testimony with regard to the petitioner's decision not to testify at trial. Thus, the court concluded that there was insufficient evidence presented by the petitioner to show that he had asked to testify, but his attorneys had declined his request.

With regard to trial counsel's decision not to recommend that the petitioner take the stand at trial, trial counsel testified that petitioner did not do well on the stand during cross-examination at the suppression hearing and after the hearing stated that he did not want to testify at trial. *See* Resp't's Mem. Opp'n App. T, June 7, 2005 Habeas Hearing Transcript at 19-21, 48-49. Furthermore, counsel indicated that had the petitioner taken the stand, he would likely have drawn even greater attention to his statements to the police and the statement of his girlfriend regarding his involvement in the assault, burglary and robbery of the Lezottes and also would have been subject to damaging cross-examination as to these pieces of evidence. *See id.* at May 19, 2005 Habeas Hearing Transcript at 73-75; June 5, 2005 Habeas Hearing Transcript at 36-39. The petitioner offered no evidence to demonstrate that this trial strategy fell outside the range of competent assistance.

The Connecticut Appellate Court further found that even if counsel's strategy of recommending that petitioner not take the stand at trial was unreasonable, the petitioner had not shown that the outcome of the trial would have been different had he testified on his own behalf at trial. Thus, the Appellate Court concluded that the petitioner had not met the prejudice prong

of the *Strickland* standard.  The state court's determination of this issue was not contrary to or an unreasonable application of Supreme Court law.  The petition is denied as to this claim of ineffective assistance of counsel.

### 5.  Closing Argument

The petitioner claimed that trial counsel's closing argument was deficient because counsel conceded his guilt as to the crimes of assault in the second degree and burglary in the first degree. The petitioner contends that counsel had not discussed this strategy with him prior to the closing argument.

"The right to effective assistance extends to closing arguments." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (citing *Bell v. Cone*, 535 U.S. 685, 701–702 (2002); *Herring v. New York*, 422 U.S. 853, 865 (1975)).  "Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Id.* at 5–6.  Although summations should "'sharpen and clarify the issues to be resolved by the trier of fact,'" there are many reasonable answers as to which issues should be sharpened and how those issues should effectively be clarified. *Id.* (quoting *Herring*, 422 U.S. at 862).

In his decision denying the amended habeas petition, the trial judge noted that the petitioner had extracted small portions of the closing argument in support of his claim of ineffective assistance.  The trial court reviewed counsel's entire closing argument and stated that it was clear that counsel's strategy was to challenge the more serious robbery counts on the ground that there was reasonable doubt as to two key elements of those offenses.  The trial court concluded that it was not an unreasonable trial strategy to focus on the robbery counts in view of the fact that the evidence in support of the assault and burglary charges was substantial and

conviction on those counts was inevitable. The trial court stated that there was nothing in counsel's closing argument to undermine the court's confidence in the verdict of the jury.

The Connecticut Appellate Court determined that the petitioner had failed to present sufficient evidence to show that counsel's strategy was ineffective or that the outcome of the trial would have been different had counsel not employed this strategy during closing argument. Thus, the court concluded that the petitioner had not met either prong of the *Strickland* standard. The state court's determination of this issue was not contrary to or an unreasonable application of Supreme Court law. The petition is denied as to this claim of ineffective assistance of counsel.

## V.     Conclusion

The petition for writ of habeas corpus [**Doc. #1**] is **DENIED**. The court concludes that the petitioner has not demonstrated the denial of a constitutional right. Accordingly, a certificate of appealability will not issue. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 28th day of July, 2011, at New Haven, Connecticut.

 */s/ Charles S. Haight, Jr.*

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE